IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOREN SCOTT BRATCHER,

    Petitioner,                    No. 2:09-cv-0261 JFM (HC)

    vs.

WARDEN, et al.,                     <u>ORDER AND</u>

    Respondents.             <u>FINDINGS & RECOMMENDATIONS</u>

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction on a plea of no contest to charges of possession of a controlled substance (Cal. Health & Safety Code § 11350(a), and admission of a prior serious felony conviction. He seeks relief on the grounds that: (1) the motion to suppress should have been granted because the pat search was unlawful; (2) the motion to suppress should have been granted because the officer exceeded the scope of a lawful patdown search; and (3) trial counsel provided ineffective assistance of counsel. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

        1. Petitioner entered his no contest plea on December 15, 2006.

2.  Petitioner filed a timely appeal.  On May 16, 2008, the California Court of Appeal, Third Appellate District, affirmed the judgment.  (Lodged Doc. 1.)

3.  Petitioner filed a petition for rehearing which the Third District Court of Appeals denied on June 13, 2008.  (Lodged Doc. 4.)

4.  Petitioner filed a petition for review in the California Supreme Court on June 19, 2008.  (Lodged Doc. 5.)  The California Supreme Court denied the petition without comment on August 20, 2008.  (Lodged Doc. 6.)

5.  Petitioner filed the instant action on January 29, 2009.

FACTUAL BACKGROUND[1]

After dark on a March evening, Sacramento Police Officers Maria On and Michael Pinola were patrolling in the area of Phoenix Park (also known as G Parkway), near Franklin Boulevard and Shining Star Drive.  Officers On and Pinola testified this area is known for gang activities, murders and drug sales:  tenants of Phoenix Park are issued identification indicating their right to come and go from the complex, and visitors are supposed to be accompanied by tenants.  The homeowners' associations have authorized officers to contact people on the property to determine whether they live there or whether they have legitimate business on the premises.

Accordingly, when she saw [petitioner] walking in that area, Officer On at first intended to approach him to "see who he was visiting within the complex or if he was a tenant within the complex."  The officers then saw [petitioner] jaywalk across the intersection, so they decided to initiate a stop and cite him for jaywalking.

Officer On approached [petitioner], and told him he had been stopped for jaywalking.  She then asked his name and "whether or not he was on any kind of probation or parole."  [Petitioner] gave his name and said he was "on informal probation."

When Officer On asked [petitioner] if he was on searchable probation, he did not respond.  He did not make eye contact with the officers:  he was looking around and appeared nervous.  He wore thick, baggy, corduroy clothing.  Officer Pinola later testified

/////

---

[1] This statement of facts is taken from the May 16, 2008 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at 2-5 (Lodged Doc. 1.)

[petitioner's] body appeared to be trembling, and his hands were visibly shaking.

Officer On then asked [petitioner] whether he had any weapons. When he failed to respond, Officer On told [petitioner] she was going to conduct a patdown search for weapons, and asked if he had anything "that was sharp that was going to poke or stick" her. [Petitioner] continued to look around and did not respond.

Officer On conducted a patsearch of [petitioner]. She "felt a circle object with a tubing" in his pants pocket, and asked, "Is that a pipe you have in your pocket?" [Petitioner] continued to look around and did not respond, and she pulled from his pants pocket what proved to be a pipe and cocaine.

After [petitioner] had been detained, Officer Pinola checked police records and learned that [petitioner] was on "formal searchable" probation.

[Petitioner] moved to suppress the evidence. At the suppression hearing, both officers testified that nothing about his behavior – other than the jaywalking – suggested [petitioner] was engaged in any criminal activity, or that he was armed.

Officer On testified she would have conducted a patdown search of [petitioner], even had he not told her he was on informal probation, because – based on her "knowledge of that neighborhood" and [petitioner's] "baggy clothes" and demeanor – she believed a patsearch was necessary for her safety. Officer Pinola likewise testified he would have conducted a patsearch absent any knowledge about [petitioner's] probation status based on [petitioner's] demeanor: "Working this area I would say that over 50 percent of the people I come in contact with carry some type of edge weapon and sometimes in the past experience even a firearm. And due to his behavior, I was unsure about whether or not he would produce some type of weapon or he would have attempted to flee on us or possibly fight us."

The trial court denied [petitioner's] motion to suppress, stating, "[t]he evidence establishes that the contact that Officer On made with the [petitioner] was correct and proper. She observed a violation of a municipal code, a municipal ordinance concerning jaywalking and approached him for the purpose of citing him and she was well within what is permitted. [¶] I think then when you add – I think there's more present here than there was in the *Lawler*[2] case. We know this was in a high crime area. Apparently produced at least for some period of time a greater percentage of murders than any other area in Sacramento was producing. It's a

---

[2] People v. Lawler (1973) 9 Cal.3d 156.

> known gang area, drug activity taking place and did inquire and I think that was permitted for her to inquire whether or not he was on probation. And the only thing that she learned was that he was on probation for something. [¶] At that point he's nervous, evasive conduct, would not answer questions, wearing the baggy clothes in which a weapon could be hidden. Add all that together in the high crime area – it was not late, late at night, but it was certainly at that time of year very dark on the streets in Northern California and – her purpose of searching – purpose of pat down to determine weapons I believe was totally appropriate. Not doing so under those circumstances often ends up in dead police officers."
>
> After the trial court denied his suppression motion, [petitioner] pled no contest to possession of cocaine base and admitted a prior strike conviction. He was sentenced to the low prison term of 16 months, doubled by virtue of the prior strike.

Id.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

/////

4

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, __ U.S. __, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

  A. Fourth Amendment

Petitioner's first two claims are that the trial court erred by denying petitioner's motion to suppress evidence obtained through a patdown search. He argues that the court's ruling violated his Fourth Amendment right to be free from unreasonable searches and seizures. (Id.) These claims are not cognizable in a federal habeas corpus proceeding.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Thus, a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates that the state did not provide an opportunity for full and fair litigation of the claim; it is

immaterial whether the petitioner actually litigated the Fourth Amendment claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordan v. Duran, 895 F.2d 610, 613 (9th Cir. 1990).

The issue before this court is whether petitioner had a full and fair opportunity in the state courts to litigate his Fourth Amendment claim, not whether the state courts correctly disposed of the Fourth Amendment issues tendered to them or even whether the claim was correctly understood. See Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994). Here, the trial court held a hearing on petitioner's motion to suppress pursuant to California Penal Code § 1538.5 on September 15, 2006. (RT 1-42.) Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court. Accordingly, these claims are barred.

B. Ineffective Assistance of Counsel

Petitioner argues that if his Fourth Amendment claims are forfeited, in the alternative his trial counsel was ineffective based on counsel's failure to assert the inapplicability of the plain feel exception in the motion to suppress. (Pet. at 53.)

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent nature of the plea by showing that the advice he received from counsel was [inadequate].

Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973). With respect to ineffective assistance of counsel claims based on pre-plea matters, whether or not such claims will be barred depends on the relationship of the conduct challenged to the validity of the plea. Tollett, 411 U.S. at 267, 93 S.Ct. at 1608. When the nature of the ineffective assistance claim calls into question the voluntary and intelligent character of the plea, that claim likely is not barred under Tollett. However, when the nature of the ineffective assistance claim does not raise any such question, the Tollett bar on claims based on pre-plea constitutional violations will apply. Thus,

petitioner's allegations about counsel's pre-plea actions are waived by a guilty plea.  See United States v. Bohn, 956 F.2d 208, 209 (9th Cir.1994) (holding that defendant's guilty plea waived any claim that he was denied assistance of counsel at a pre-plea hearing); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir.1994) (holding that guilty plea precluded habeas petitioner from raising pre-plea claim that his attorneys failed to challenge petitioner's confession).

But even assuming, *arguendo,* the court could reach the merits of petitioner's ineffective assistance of counsel claim, his claim is unavailing.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  The benchmark for assessing claims of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Nunes v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003) (quoting Strickland, 466 U.S. at 686).  A petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of

the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The state court rejected this claim stating:

> In his brief on appeal, [petitioner] relies on decisions by the courts of other states, and cites no binding authority for the proposition that, "[t]o credit an officer's testimony that the incriminating nature of an item was immediately apparent to her based upon plain feel . . . , there must be testimony about the officer's training and experience" in recognizing contraband by touch, and we are aware of none. Absent any such authority, defense counsel could reasonably have concluded there existed no basis for the argument he proffers here, or that evidence of Officer On's qualifications in recognizing a contraband pipe by feel would have been a simple matter to elicit. Appellate courts reverse convictions on the ground of inadequate counsel only if the record affirmatively discloses that counsel had no rational tactical purpose for his or her act or omission. (People v. Bradford (1997) 14 Cal.4th 1005, 1052.)

People v. Bratcher, slip op. at 12-13. The state court's rejection of petitioner's this claim was neither contrary to, nor an unreasonable application of, controlling principles of Strickland.

Detective On testified that when she conducted the pat-down search, she "felt a circle object with a tubing and at that point [she] asked [petitioner]: Is that a pipe you have in your pocket?" (RT 8.) This court concurs with the state court's view of this question as rhetorical, and demonstrates that "the nature of the item was immediately apparent to Officer On, and therefore seizure of the item [was] legal." People v. Bratcher, slip op. at 13. Because the nature of the item was readily apparent to Detective On, petitioner's proposed arguments concerning the inapplicability of the plain feel doctrine would not have changed the outcome here. In light of this evidence, trial counsel was not ineffective for failing to pose the arguments petitioner suggests. This claim should be denied.

Accordingly, IT IS ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

/////

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 12, 2009.

UNITED STATES MAGISTRATE JUDGE

/001; brat0261.157